

ORIGINAL

1  LYNN HUBBARD, III, SBN 69773
2  SCOTTLYNN J HUBBARD, IV, SBN 212970
   **DISABLED ADVOCACY GROUP, APLC**
3  12 Williamsburg Lane
   Chico, CA 95926
4  Telephone: (530) 895-3252
   Facsimile: (530) 894-8244
5

6  Attorneys for Plaintiff Tony Martinez

7                                                    E-filing

8
9           UNITED STATES DISTRICT COURT
10          NORTHERN DISTRICT OF CALIFORNIA
11

12
13  Tony Martinez,                    )  No. **CV 10 2437**
14          Plaintiff,                )
15          vs.                       )  **Plaintiff's Complaint**
16  Chelsea Financing Partnership, LP; )              **EDL**
17  Kenneth Cole Productions, Inc. dba )
18  Kenneth Cole #5017; Tommy         )
    Hilfiger Retail, LLC dba Tommy    )
19  Hilfiger Store #28; Banana Republic,)
20  LLC dba Banana Republic Factory   )
    Store #1997; Grace Holmes, Inc. dba)
21  J. Crew Store #0030; Barneys, Inc. )
22  which will do business in California )
    as Barneys New York dba Barneys   )
23  New York Outlet #415; The Gap,    )
24  Inc. dba Gap Outlet #1042; Lucky  )
    Brand Dungarees Stores, Inc. dba  )
25  Lucky Brand Jeans Outlet #3337;   )
26  Levi's Only Stores, Inc. dba Dockers )
    Outlet Store #520; PVH Retail     )
27  Stores, Inc. dba Calvin Klein Store )
28

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1    #048; Retail Brand Alliance dba    )
2    Brooks Brothers #6704; Zumiez, Inc. )
3    dba Zumiez #139; Nautica Retail    )
     USA, Inc. dba Nautica Napa #0030; )
4    Levi's Only Stores, Inc. dba Levi's    )
5    Outlet Store #312,    )

6        Defendants.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1

I.      SUMMARY

2      1.      This is a civil rights action by plaintiff Tony Martinez ("Martinez")

3   for discrimination at the building, structure, facility, complex, property, land,

4   development, and/or surrounding business complexes known as:

5

6   Napa Premium Outlet Common Areas
    629 Factory Stores Drive

7   Napa, California  94558
    (Assessor's Parcel No. 004.420.017)

8   (hereafter "the Napa Premium Outlets Common Area Facility")

9

10  Kenneth Cole #5017
    591 Factory Stores Drive

11  Napa, California  94558

12  (hereafter "the Kenneth Cole Facility")

13
    Tommy Hilfiger Store #28

14  629 Factory Stores Drive

15  Napa, California  94558
    (hereafter "the Tommy Hilfiger Facility")

16

17  Banana Republic Factory Store #1997
    Factory Stores Drive

18  Napa, California  94558

19  (hereafter "the Banana Republic Facility")

20
    J. Crew Store #0030

21  867 Factory Stores Drive

22  Napa, California  94558
    (hereafter "the J. Crew Facility")

23

24  Barneys New York Outlet #415
    821 Factory Stores Drive

25  Napa, California  94558

26  (hereafter "the Barneys New York Facility")

27

28

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1

Gap Outlet #1042

2 629 Factory Stores Drive

3 Napa, California 94558
(hereafter "the Gap Facility")

4

5 Lucky Brand Jeans Outlet #3337
629 Factory Stores Drive

6 Napa, California 94558

7 (hereafter "the Lucky Facility")

8
Dockers Outlet Store #520

9 653 Factory Stores Drive

10 Napa, California 94558
(hereafter "the Dockers Facility")

11

12 Calvin Klein Store #048
705 Factory Stores Drive

13 Napa, California 94558

14 (hereafter "the Calvin Klein Facility")

15
Brooks Brothers #6704

16 637 Factory Stores Drive

17 Napa, California 94558
(hereafter "the Brooks Brothers Facility")

18

19 Zumiez #139
629 Factory Stores Drive, Suite 0649

20 Napa, California 94558

21 (hereafter "the Zumiez Facility")

22
Nautica Napa #0030

23 701 Factory Stores Drive

24 Napa, California 94558
(hereafter "the Nautica Facility")

25

26 Levi's Outlet Store #312

27 Factory Stores Drive
Napa, California 94558

28 (hereafter "the Levi's Facility") (collectively, "the Facilities")
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 4

1    2.    Pursuant to the Americans with Disabilities Act of 1990, (42 U.S.C.

2  §§ 12101 et seq.), and related California statutes, Martinez seeks damages,

3  injunctive and declaratory relief, and attorney fees and costs, against:

4    • Chelsea Financing Partnership, LP (hereinafter the "Napa Premium

5      Outlets Common Area Defendant");

6    • Kenneth Cole Productions, Inc. dba Kenneth Cole #5017 (hereinafter the

7      "Kenneth Cole Defendant");

8    • Tommy Hilfiger Retail, LLC dba Tommy Hilfiger Store #28 (hereinafter

9      the "Tommy Hilfiger Defendant");

10   • Banana Republic, LLC dba Banana Republic Factory Store #1997

11     (hereinafter the "Banana Republic Defendant");

12   • Grace Holmes, Inc. dba J. Crew Store #0030 (hereinafter the "J. Crew

13     Defendant");

14   • Barneys, Inc. which will do business in California as Barneys New York

15     dba Barneys New York Outlet #415 (hereinafter the "Barneys New York

16     Defendant");

17   • The Gap, Inc. dba Gap Outlet #1042 (hereinafter the "Gap Defendant");

18   • Lucky Brand Dungarees Stores, Inc. dba Lucky Brand Jeans Outlet #3337

19     (hereinafter the "Lucky Defendant");

20   • Levi's Only Stores, Inc. dba Dockers Outlet Store #520 (hereinafter the

21     "Dockers Defendant");

22   • PVH Retail Stores, Inc. dba Calvin Klein Store #048 (hereinafter the

23     "Calvin Klein Defendant");

24   • Retail Brand Alliance, Inc. dba Brooks Brothers #6704 (hereinafter the

25     "Brooks Brothers Defendant");

26   • Zumiez, Inc. dba Zumiez #139 (hereinafter the "Zumiez Defendant");

27   • Nautica Retail USA, Inc. dba Nautica Napa #0030 (hereinafter the

28     "Nautica Defendant");

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 5

1    • Levi's Only Stores, Inc. dba Levi's Outlet Store #312 (hereinafter the
2      "Levi's Defendant").

3                          II.    JURISDICTION

4        3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and
5    1343 for ADA claims.

6        4.    Supplemental jurisdiction for claims brought under parallel
7    California law—arising from the same nucleus of operative facts—is predicated
8    on 28 U.S.C. § 1367.

9        5.    Martinez's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

10                         III.    VENUE

11       6.    All actions complained of herein take place within the jurisdiction
12   of the United States District Court, Northern District of California, and venue is
13   invoked pursuant to 28 U.S.C. § 1391(b), (c).

14                         IV.    PARTIES

15       7.    The Napa Premium Outlets Common Area Defendant owns,
16   operates, manages, and/or leases the Napa Premium Outlets Common Area
17   Facility, and consists of a person (or persons), firm, and/or corporation.

18       8.    The Kenneth Cole Defendant owns, operates, manages, and/or
19   leases the Kenneth Cole Facility, and consists of a person (or persons), firm,
20   and/or corporation.

21       9.    The Tommy Hilfiger Defendant owns, operates, manages, and/or
22   leases the Tommy Hilfiger Facility, and consists of a person (or persons), firm,
23   and/or corporation.

24       10.   The Banana Republic Defendant owns, operates, manages, and/or
25   leases the Banana Republic Facility, and consists of a person (or persons), firm,
26   and/or corporation.

27       11.   The J. Crew Defendant owns, operates, manages, and/or leases the
28   J. Crew Facility, and consists of a person (or persons), firm, and/or corporation.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1    12.    The Barneys New York Defendant owns, operates, manages, and/or
2  leases the Barneys New York Facility, and consists of a person (or persons),
3  firm, and/or corporation.

4    13.    The Gap Defendant owns, operates, manages, and/or leases the Gap
5  Facility, and consists of a person (or persons), firm, and/or corporation.

6    14.    The Lucky Defendant owns, operates, manages, and/or leases the
7  Lucky Facility, and consists of a person (or persons), firm, and/or corporation.

8    15.    The Dockers Defendant owns, operates, manages, and/or leases the
9  Dockers Facility, and consists of a person (or persons), firm, and/or corporation.

10    16.    The Calvin Klein Defendant owns, operates, manages, and/or leases
11  the Calvin Klein Facility, and consists of a person (or persons), firm, and/or
12  corporation.

13    17.    The Brooks Brothers Defendant owns, operates, manages, and/or
14  leases the Brooks Brothers Facility, and consists of a person (or persons), firm,
15  and/or corporation.

16    18.    The Zumiez Defendant owns, operates, manages, and/or leases the
17  Zumiez Facility, and consists of a person (or persons), firm, and/or corporation.

18    19.    The Nautica Defendant owns, operates, manages, and/or leases the
19  Nautica Facility, and consists of a person (or persons), firm, and/or corporation.

20    20.    The Levi's Defendant owns, operates, manages, and/or leases the
21  Levi's Facility, and consists of a person (or persons), firm, and/or corporation.

22    21.    Martinez is a paraplegic as result of being shot in the back in 1987.
23  He requires the use of a wheelchair and mobility equipped vehicle when
24  traveling about in public. Consequently, Martinez is "physically disabled," as
25  defined by all applicable California and United States laws, and a member of the
26  public whose rights are protected by these laws.

27  ///

28  ///

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 7

## V.    FACTS

22.    The Napa Premium Outlets Common Area Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

23.    The Kenneth Cole Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

24.    The Tommy Hilfiger Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

25.    The Banana Republic Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

26.    The J. Crew Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

27.    The Barneys New York Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

28.    The Gap Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

29.    The Lucky Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

30.    The Dockers Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

31. The Calvin Klein Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

32. The Brooks Brothers Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

33. The Zumiez Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

34. The Nautica Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

35. The Levi's Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

36. Martinez visited the Facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—his ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

37. To the extent known by Martinez, the barriers at the Napa Premium Outlets Common Area Facility included, but are not limited to, the following:

*Parking:*

- The slopes and/or cross slopes of the disabled parking spaces throughout the shopping center exceed 2.0%;
- The slopes and/or cross slopes of the access aisles throughout the shopping center exceed 2.0% (many due to encroaching built-up curb ramps);

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1        • The slopes and/or cross slopes of the cut-out curb ramps throughout
2          the shopping center exceed 2.0%;

3        • The signage at the disabled parking spaces throughout the shopping
4          center is incorrect;

5        • The signage at the van accessible parking spaces throughout the
6          shopping center is incorrect;

7        • There are no marked crossings where the accessible route from the
8          disabled parking spaces to the Facilities' entrances crosses into the
9          vehicular way;

10       • There are multiple ramps throughout the shoping center that are too
11         steep;

12       • There are many diabled parkting spaces throughout the shopping
13         center with excessive slopes and/or cross slopes due to encroaching
14         ramps;

15 *Common Restroom:* There are numerous barriers to access, including, but
16 not limited to:

17       • The toilet tissue dispenser is an obstruction to the use of the side
18         grab bar;

19       • The toilet tissue dispenser contains sharp edges;

20       • The front roll of toilet tissue is more than 12 inches from the front
21         of the water closet;

22       • The pipes beneath the lavatories are improperly and incompletely
23         wrapped;

24       • The baby changing station is too high; and,

25       • There is insufficient strike side clearance when exiting the restroom;

26 *Common Seating:*

27       • None of the seating is designated as being accessible to the
28         disabled; and,

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1          • None of the seating is accessible to the disabled.

2          These barriers prevented Martinez from enjoying full and equal access at

3    the Napa Premium Outlets Common Area Facility.

4          38.    Martinez was also deterred from visiting the Napa Premium Outlets

5    Common Area Facility because he knew that the Napa Premium Outlets

6    Common Area Facility's goods, services, facilities, privileges, advantages, and

7    accommodations were unavailable to physically disabled patrons (such as

8    himself). He continues to be deterred from visiting the Napa Premium Outlets

9    Common Area Facility because of the future threats of injury created by these

10   barriers.

11         39.    To the extent known by Martinez, the barriers at the Kenneth Cole

12   Facility included, but are not limited to, the following:

13             • There is no International Symbol of Accessibility ("ISA") mounted

14               at the entrance;

15             • The entrance door has inaccessible "panel" handles;

16             • Many of the aisles through the store are blocked by merchandise

17               and are thus too narrow;

18             • The dressing room door lock requires twisting, pinching and/or

19               grasping to operate;

20             • The dressing room bench is not secured to the wall;

21             • The dressing room bench is not 24 inches wide by 48 inches long;

22             • The pay point machine is too high and/or at too steep of an angle;

23             • Due to merchandise displayed, there is insufficient clear floor space

24               at the check out counter; and/or

25             • The check out counter is too high with no portion lowered to

26               accommodate a patron in a wheelchair; and/or

27             • The check out counter is cluttered with merchandise and thus lacks

28               the required depth.

1      These barriers prevented Martinez from enjoying full and equal access at
2  the Kenneth Cole Facility.

3      40.    Martinez was also deterred from visiting the Kenneth Cole Facility
4  because he knew that the Kenneth Cole Facility's goods, services, facilities,
5  privileges, advantages, and accommodations were unavailable to physically
6  disabled patrons (such as himself). He continues to be deterred from visiting the
7  Kenneth Cole Facility because of the future threats of injury created by these
8  barriers.

9      41.    To the extent known by Martinez, the barriers at the Tommy
10 Hilfiger Facility included, but are not limited to, the following:

11     • There is no ISA mounted at the entrance;

12     • The entrance door has inaccessible "panel" handles;

13     • Many of the aisles through the store are blocked by merchandise
14       and are thus too narrow;

15     • The dressing room bench is not 24 inches wide by 48 inches long;

16     • The pay point machine is too high and/or at too steep of an angle;

17     • Due to merchandise displayed, there is insufficient clear floor space
18       at the check out counter; and/or

19     • The check out counter is too high with no portion lowered to
20       accommodate a patron in a wheelchair; and/or

21     • The check out counter is cluttered with merchandise and thus lacks
22       the required depth.

23     These barriers prevented Martinez from enjoying full and equal access at
24 the Tommy Hilfiger Facility.

25     42.    Martinez was also deterred from visiting the Tommy Hilfiger
26 Facility because he knew that the Tommy Hilfiger Facility's goods, services,
27 facilities, privileges, advantages, and accommodations were unavailable to
28 physically disabled patrons (such as himself). He continues to be deterred from

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 12

1    visiting the Tommy Hilfiger Facility because of the future threats of injury
2    created by these barriers.

3        43.    To the extent known by Martinez, the barriers at the Banana
4    Republic Facility included, but are not limited to, the following:

5        • There is no ISA mounted at the entrance;

6        • The entrance door has inaccessible "panel" handles;

7        • Many of the aisles through the store are blocked by merchandise
8          and are thus too narrow;

9        • The dressing room bench is not 24 inches wide by 48 inches long;

10       • The pay point machine is too high and/or at too steep of an angle;

11       • Due to merchandise displayed, there is insufficient clear floor space
12         at the check out counter; and/or

13       • The check out counter is too high with no portion lowered to
14         accommodate a patron in a wheelchair; and/or

15       • The check out counter is cluttered with merchandise and thus lacks
16         the required depth.

17       These barriers prevented Martinez from enjoying full and equal access at
18   the Banana Republic Facility.

19       44.    Martinez was also deterred from visiting the Banana Republic
20   Facility because he knew that the Banana Republic Facility's goods, services,
21   facilities, privileges, advantages, and accommodations were unavailable to
22   physically disabled patrons (such as himself). He continues to be deterred from
23   visiting the Banana Republic Facility because of the future threats of injury
24   created by these barriers.

25       45.    To the extent known by Martinez, the barriers at the J. Crew Facility
26   included, but are not limited to, the following:

27       • There is no ISA mounted at the entrance;

28       • The entrance door has inaccessible "panel" handles;

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 13

1     • Many of the aisles through the store are blocked by merchandise
2       and are thus too narrow;

3     • There is insufficient clear floor space within the dressing room;

4     • The dressing room bench is not 24 inches wide by 48 inches long;

5     • The clothes hooks in the dressing room are too high;

6     • The dressing room door lock requires twisting, pinching and/or
7       grasping to operate;

8     • The pay point machine is too high and/or at too steep of an angle;

9     • Due to merchandise displayed, there is insufficient clear floor space
10      at the check out counter; and/or

11    • The check out counter is too high with no portion lowered to
12      accommodate a patron in a wheelchair; and/or

13    • The check out counter is cluttered with merchandise and thus lacks
14      the required depth.

15    These barriers prevented Martinez from enjoying full and equal access at
16    the J. Crew Facility.

17    46.    Martinez was also deterred from visiting the J. Crew Facility
18    because he knew that the J. Crew Facility's goods, services, facilities, privileges,
19    advantages, and accommodations were unavailable to physically disabled
20    patrons (such as himself). He continues to be deterred from visiting the J. Crew
21    Facility because of the future threats of injury created by these barriers.

22    47.    To the extent known by Martinez, the barriers at the Barneys New
23    York Facility included, but are not limited to, the following:

24    • There is no ISA mounted at the entrance;

25    • The entrance door has inaccessible "panel" handles;

26    • Many of the aisles through the store are blocked by merchandise
27      and are thus too narrow;

28    • The dressing room bench is not 24 inches wide by 48 inches long;

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 14

1  - The pay point machine is too high and/or at too steep of an angle;

2  - Due to merchandise displayed, there is insufficient clear floor space
3    at the check out counter; and/or

4  - The check out counter is too high with no portion lowered to
5    accommodate a patron in a wheelchair; and/or

6  - The check out counter is cluttered with merchandise and thus lacks
7    the required depth.

8  These barriers prevented Martinez from enjoying full and equal access at
9  the Barneys New York Facility.

10  48.  Martinez was also deterred from visiting the Barneys New York
11  Facility because he knew that the Barneys New York Facility's goods, services,
12  facilities, privileges, advantages, and accommodations were unavailable to
13  physically disabled patrons (such as himself). He continues to be deterred from
14  visiting the Barneys New York Facility because of the future threats of injury
15  created by these barriers.

16  49.  To the extent known by Martinez, the barriers at the Gap Facility
17  included, but are not limited to, the following:

18  - There is no ISA mounted at the entrance;

19  - The entrance door has inaccessible "panel" handles;

20  - Many of the aisles through the store are blocked by merchandise
21    and are thus too narrow;

22  - The dressing room bench is not 24 inches wide by 48 inches long;

23  - The pay point machine is too high and/or at too steep of an angle;

24  - Due to merchandise displayed, there is insufficient clear floor space
25    at the check out counter; and/or

26  - The check out counter is too high with no portion lowered to
27    accommodate a patron in a wheelchair; and/or

28

1         • The check out counter is cluttered with merchandise and thus lacks
2          the required depth.

3      These barriers prevented Martinez from enjoying full and equal access at
4  the Gap Facility.

5      50.    Martinez was also deterred from visiting the Gap Facility because
6  he knew that the Gap Facility's goods, services, facilities, privileges, advantages,
7  and accommodations were unavailable to physically disabled patrons (such as
8  himself). He continues to be deterred from visiting the Gap Facility because of
9  the future threats of injury created by these barriers.

10      51.    To the extent known by Martinez, the barriers at the Lucky Facility
11  included, but are not limited to, the following:

12         • The ISA mounted at the entrance is too low;

13         • The entrance door has inaccessible "panel" handles;

14         • Many of the aisles through the store are blocked by merchandise
15          and are thus too narrow;

16         • The clothing hooks in the dressing room are mounted too high;

17         • The dressing room bench is not 24 inches wide by 48 inches long;

18         • The dressing room mirror is not mounted so as to afford a view to a
19          person seated on the bench;

20         • The pay point machine is too high and/or at too steep of an angle;

21         • Due to merchandise displayed, there is insufficient clear floor space
22          at the check out counter; and/or

23         • The check out counter is too high with no portion lowered to
24          accommodate a patron in a wheelchair; and/or

25         • The check out counter is cluttered with merchandise and thus lacks
26          the required depth.

27      These barriers prevented Martinez from enjoying full and equal access at
28  the Lucky Facility.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 16

1     52.    Martinez was also deterred from visiting the Lucky Facility because

2 he knew that the Lucky Facility's goods, services, facilities, privileges,

3 advantages, and accommodations were unavailable to physically disabled

4 patrons (such as himself). He continues to be deterred from visiting the Lucky

5 Facility because of the future threats of injury created by these barriers.

6     53.    To the extent known by Martinez, the barriers at the Dockers

7 Facility included, but are not limited to, the following:

8
- There is no ISA mounted at the entrance;

9
- The entrance door has inaccessible "panel" handles;

10
- Many of the aisles through the store are blocked by merchandise

11         and are thus too narrow;

12
- The dressing room bench is not 24 inches wide by 48 inches long;

13
- The pay point machine is too high and/or at too steep of an angle;

14
- Due to merchandise displayed, there is insufficient clear floor space

15         at the check out counter; and/or

16
- The check out counter is too high with no portion lowered to

17         accommodate a patron in a wheelchair; and/or

18
- The check out counter is cluttered with merchandise and thus lacks

19         the required depth.

20     These barriers prevented Martinez from enjoying full and equal access at

21 the Dockers Facility.

22     54.    Martinez was also deterred from visiting the Dockers Facility

23 because he knew that the Dockers Facility's goods, services, facilities,

24 privileges, advantages, and accommodations were unavailable to physically

25 disabled patrons (such as himself). He continues to be deterred from visiting the

26 Dockers Facility because of the future threats of injury created by these barriers.

27 ///

28 ///

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 17

55.     To the extent known by Martinez, the barriers at the Calvin Klein Facility included, but are not limited to, the following:

- The ISA mounted at the entrance is too low;
- The entrance door has inaccessible "panel" handles;
- Many of the aisles through the store are blocked by merchandise and are thus too narrow;
- The dressing room bench is not secured to the wall;
- The dressing room bench is not 24 inches wide by 48 inches long;
- The pay point machine is too high and/or at too steep of an angle;
- Due to merchandise displayed, there is insufficient clear floor space at the check out counter; and/or
- The check out counter is too high with no portion lowered to accommodate a patron in a wheelchair; and/or
- The check out counter is cluttered with merchandise and thus lacks the required depth.

These barriers prevented Martinez from enjoying full and equal access at the Calvin Klein Facility.

56.     Martinez was also deterred from visiting the Calvin Klein Facility because he knew that the Calvin Klein Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the Calvin Klein Facility because of the future threats of injury created by these barriers.

57.     To the extent known by Martinez, the barriers at the Brooks Brothers Facility included, but are not limited to, the following:

- There is no ISA mounted at the entrance;
- The entrance door has inaccessible "panel" handles;

1
2

- Many of the aisles through the store are blocked by merchandise and are thus too narrow;

3

- The dressing room bench is not 24 inches wide by 48 inches long;

4

- The pay point machine is too high and/or at too steep of an angle;

5
6

- Due to merchandise displayed, there is insufficient clear floor space at the check out counter; and/or

7
8

- The check out counter is too high with no portion lowered to accommodate a patron in a wheelchair; and/or

9
10

- The check out counter is cluttered with merchandise and thus lacks the required depth.

11      These barriers prevented Martinez from enjoying full and equal access at
12 the Brooks Brothers Facility.

13      58.     Martinez was also deterred from visiting the Brooks Brothers
14 Facility because he knew that the Brooks Brothers Facility's goods, services,
15 facilities, privileges, advantages, and accommodations were unavailable to
16 physically disabled patrons (such as himself). He continues to be deterred from
17 visiting the Brooks Brothers Facility because of the future threats of injury
18 created by these barriers.

19      59.     To the extent known by Martinez, the barriers at the Zumiez Facility
20 included, but are not limited to, the following:

21

- There is no ISA mounted at the entrance;

22

- The entrance door has inaccessible "panel" handles;

23
24

- Many of the aisles through the store are blocked by merchandise and are thus too narrow;

25

- The dressing room bench is not 24 inches wide by 48 inches long;

26

- The pay point machine is too high and/or at too steep of an angle;

27
28

- Due to merchandise displayed, there is insufficient clear floor space at the check out counter; and/or

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1
2

- The check out counter is too high with no portion lowered to accommodate a patron in a wheelchair; and/or

3
4

- The check out counter is cluttered with merchandise and thus lacks the required depth.

5
6

These barriers prevented Martinez from enjoying full and equal access at the Zumiez Facility.

7    60.    Martinez was also deterred from visiting the Zumiez Facility
8  because he knew that the Zumiez Facility's goods, services, facilities, privileges,
9  advantages, and accommodations were unavailable to physically disabled
10 patrons (such as himself). He continues to be deterred from visiting the Zumiez
11 Facility because of the future threats of injury created by these barriers.

12    61.    To the extent known by Martinez, the barriers at the Nautica Facility
13 included, but are not limited to, the following:

14

- There is no ISA mounted at the entrance;

15

- The entrance door has inaccessible "panel" handles;

16
17

- Many of the aisles through the store are blocked by merchandise and are thus too narrow;

18

- The dressing room bench is not 24 inches wide by 48 inches long;

19

- The grab bar in the dressing room is mounted too high;

20

- The clothes hook in the dressing room is mounted too high;

21

- The pay point machine is too high and/or at too steep of an angle;

22
23

- Due to merchandise displayed, there is insufficient clear floor space at the check out counter; and/or

24
25

- The check out counter is too high with no portion lowered to accommodate a patron in a wheelchair; and/or

26
27

- The check out counter is cluttered with merchandise and thus lacks the required depth.

28

1
2
These barriers prevented Martinez from enjoying full and equal access at the Nautica Facility.

3
4
5
6
7
62.    Martinez was also deterred from visiting the Nautica Facility because he knew that the Nautica Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the Nautica Facility because of the future threats of injury created by these barriers.

8
9
63.    To the extent known by Martinez, the barriers at the Levi's Facility included, but are not limited to, the following:

10
- There is no ISA mounted at the entrance;

11
- The entrance door has inaccessible "panel" handles;

12
13
- Many of the aisles through the store are blocked by merchandise and are thus too narrow;

14
- The dressing room bench is not 24 inches wide by 48 inches long;

15
16
- The dressing room mirror is not mounted so as to afford a view to a person seated on the bench;

17
- The pay point machine is too high and/or at too steep of an angle;

18
19
- Due to merchandise displayed, there is insufficient clear floor space at the check out counter; and/or

20
21
- The check out counter is too high with no portion lowered to accommodate a patron in a wheelchair; and/or

22
23
- The check out counter is cluttered with merchandise and thus lacks the required depth.

24
25
These barriers prevented Martinez from enjoying full and equal access at the Levi's Facility.

26
27
28
64.    Martinez was also deterred from visiting the Levi's Facility because he knew that the Levi's Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1
2

patrons (such as himself). He continues to be deterred from visiting the Levi's Facility because of the future threats of injury created by these barriers.

3
4
5
6

65. Martinez also encountered barriers at the Facilities which violate state and federal law, but were unrelated to his disability. Nothing within this Complaint, however, should be construed as an allegation that Martinez is seeking to remove barriers unrelated to his disability.

7
8
9
10
11
12
13
14
15
16

66. The Napa Premium Outlets Common Area Defendant knew that these elements and areas of the Napa Premium Outlets Common Area Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Napa Premium Outlets Common Area Defendant has the financial resources to remove these barriers from the Napa Premium Outlets Common Area Facility (without much difficulty or expense), and make the Napa Premium Outlets Common Area Facility accessible to the physically disabled. To date, however, the Napa Premium Outlets Common Area Defendant refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

17
18
19
20
21
22
23
24
25
26
27
28

67. At all relevant times, the Napa Premium Outlets Common Area Defendant has possessed and enjoyed sufficient control and authority to modify the Napa Premium Outlets Common Area Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. The Napa Premium Outlets Common Area Defendant has not removed such impediments and has not modified the Napa Premium Outlets Common Area Facility to conform to accessibility standards. The Napa Premium Outlets Common Area Defendant has intentionally maintained the Napa Premium Outlets Common Area Facility in its current condition and has intentionally refrained from altering Napa Premium Outlets Common Area Facility so that it complies with the accessibility standards.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

68. Martinez further alleges that the (continued) presence of barriers at the Napa Premium Outlets Common Area Facility is so obvious as to establish the Napa Premium Outlets Common Area Defendant's discriminatory intent. On information and belief, Martinez avers that evidence of the discriminatory intent includes the Napa Premium Outlets Common Area Defendant's refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Napa Premium Outlets Common Area Facility; conscientious decision to the architectural layout (as it currently exists) at the Napa Premium Outlets Common Area Facility; decision not to remove barriers from the Napa Premium Outlets Common Area Facility; and allowance that the Napa Premium Outlets Common Area Facility continues to exist in its non-compliant state. Martinez further alleges, on information and belief, that the Napa Premium Outlets Common Area Defendant is not in the midst of a remodel, and that the barriers present at the Napa Premium Outlets Common Area Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[1]

69. The Kenneth Cole Defendant knew that these elements and areas of the Kenneth Cole Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Kenneth Cole Defendant has the financial resources to remove these barriers from the Kenneth Cole Facility (without much difficulty or expense), and make the Kenneth Cole Facility accessible to the physically disabled. To date, however, the Kenneth Cole Defendant refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

70. At all relevant times, the Kenneth Cole Defendant has possessed and enjoyed sufficient control and authority to modify the Kenneth Cole Facility to remove impediments to wheelchair access and to comply with the Americans

---

[1] Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
2  Kenneth Cole Defendant has not removed such impediments and has not
3  modified the Kenneth Cole Facility to conform to accessibility standards. The
4  Kenneth Cole Defendant has intentionally maintained the Kenneth Cole Facility
5  in its current condition and has intentionally refrained from altering the Kenneth
6  Cole Facility so that it complies with the accessibility standards.

7  71.  Martinez further alleges that the (continued) presence of barriers at
8  the Kenneth Cole Facility is so obvious as to establish the Kenneth Cole
9  Defendant' discriminatory intent.  On information and belief, Martinez avers that
10 evidence of the discriminatory intent includes the Kenneth Cole Defendant's
11 refusal to adhere to relevant building standards; disregard for the building plans
12 and permits issued for the Kenneth Cole Facility; conscientious decision to the
13 architectural layout (as it currently exists) at the Kenneth Cole Facility; decision
14 not to remove barriers from the Kenneth Cole Facility; and allowance that the
15 Kenneth Cole Facility continues to exist in its non-compliant state.  Martinez
16 further alleges, on information and belief, that the Kenneth Cole Defendant is not
17 in the midst of a remodel, and that the barriers present at the Kenneth Cole
18 Facility are not isolated (or temporary) interruptions in access due to
19 maintenance or repairs.[2]

20 72.  The Tommy Hilfiger Defendant knew that these elements and areas
21 of the Tommy Hilfiger Facility were inaccessible, violate state and federal law,
22 and interfere with (or deny) access to the physically disabled.  Moreover, the
23 Tommy Hilfiger Defendant has the financial resources to remove these barriers
24 from the Tommy Hilfiger Facility (without much difficulty or expense), and
25 make the Tommy Hilfiger Facility accessible to the physically disabled.  To date,
26
27
28

---

[2]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  however, the Tommy Hilfiger Defendant refuses to either remove those barriers
2  or seek an unreasonable hardship exemption to excuse non-compliance.

3      73.    At all relevant times, the Tommy Hilfiger Defendant has possessed
4  and enjoyed sufficient control and authority to modify the Tommy Hilfiger
5  Facility to remove impediments to wheelchair access and to comply with the
6  Americans with Disabilities Act Accessibility Guidelines and Title 24
7  regulations. The Tommy Hilfiger Defendant has not removed such impediments
8  and has not modified the Tommy Hilfiger Facility to conform to accessibility
9  standards.   The Tommy Hilfiger Defendant has intentionally maintained the
10 Tommy Hilfiger Facility in its current condition and has intentionally refrained
11 from altering Tommy Hilfiger Facility so that it complies with the accessibility
12 standards.

13      74.    Martinez further alleges that the (continued) presence of barriers at
14 the Tommy Hilfiger Facility is so obvious as to establish the Tommy Hilfiger
15 Defendant's discriminatory intent. On information and belief, Martinez avers
16 that evidence of the discriminatory intent includes the Tommy Hilfiger
17 Defendant's refusal to adhere to relevant building standards; disregard for the
18 building plans and permits issued for the Tommy Hilfiger Facility; conscientious
19 decision to the architectural layout (as it currently exists) at the Tommy Hilfiger
20 Facility; decision not to remove barriers from the Tommy Hilfiger Facility; and
21 allowance that the Tommy Hilfiger Facility continues to exist in its non-
22 compliant state.   Martinez further alleges, on information and belief, that the
23 Tommy Hilfiger Defendant is not in the midst of a remodel, and that the barriers
24 present at the Tommy Hilfiger Facility are not isolated (or temporary)
25 interruptions in access due to maintenance or repairs.[3]

26
27
28

---

[3]    Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1   75.   The Banana Republic Defendant knew that these elements and areas
2   of the Banana Republic Facility were inaccessible, violate state and federal law,
3   and interfere with (or deny) access to the physically disabled. Moreover, the
4   Banana Republic Defendant has the financial resources to remove these barriers
5   from the Banana Republic Facility (without much difficulty or expense), and
6   make the Banana Republic Facility accessible to the physically disabled. To
7   date, however, the Banana Republic Defendant refuses to either remove those
8   barriers or seek an unreasonable hardship exemption to excuse non-compliance.

9   76.   At all relevant times, the Banana Republic Defendant has possessed
10   and enjoyed sufficient control and authority to modify the Banana Republic
11   Facility to remove impediments to wheelchair access and to comply with the
12   Americans with Disabilities Act Accessibility Guidelines and Title 24
13   regulations.   The Banana Republic Defendant has not removed such
14   impediments and has not modified the Banana Republic Facility to conform to
15   accessibility standards.   The Banana Republic Defendant has intentionally
16   maintained the Banana Republic Facility in its current condition and has
17   intentionally refrained from altering the Banana Republic Facility so that it
18   complies with the accessibility standards.

19   77.   Martinez further alleges that the (continued) presence of barriers at
20   the Banana Republic Facility is so obvious as to establish the Banana Republic
21   Defendant's discriminatory intent. On information and belief, Martinez avers
22   that evidence of the discriminatory intent includes the Banana Republic
23   Defendant's refusal to adhere to relevant building standards; disregard for the
24   building plans and permits issued for the Banana Republic Facility;
25   conscientious decision to the architectural layout (as it currently exists) at the
26   Banana Republic Facility; decision not to remove barriers from the Banana
27   Republic Facility; and allowance that the Banana Republic Facility continues to
28   exist in its non-compliant state. Martinez further alleges, on information and

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  belief, that the Banana Republic Defendant is not in the midst of a remodel, and
2  that the barriers present at the Banana Republic Facility are not isolated (or
3  temporary) interruptions in access due to maintenance or repairs.[4]

4  78.  The J. Crew Defendant knew that these elements and areas of the J.
5  Crew Facility were inaccessible, violate state and federal law, and interfere with
6  (or deny) access to the physically disabled.  Moreover, the J. Crew Defendant
7  has the financial resources to remove these barriers from the J. Crew Facility
8  (without much difficulty or expense), and make the J. Crew Facility accessible to
9  the physically disabled.  To date, however, the J. Crew Defendant refuses to
10  either remove those barriers or seek an unreasonable hardship exemption to
11  excuse non-compliance.

12  79.  At all relevant times, the J. Crew Defendant has possessed and
13  enjoyed sufficient control and authority to modify the J. Crew Facility to remove
14  impediments to wheelchair access and to comply with the Americans with
15  Disabilities Act Accessibility Guidelines and Title 24 regulations.  The J. Crew
16  Defendant has not removed such impediments and has not modified the J. Crew
17  Facility to conform to accessibility standards.  The J. Crew Defendant has
18  intentionally maintained the J. Crew Facility in its current condition and has
19  intentionally refrained from altering the J. Crew Facility so that it complies with
20  the accessibility standards.

21  80.  Martinez further alleges that the (continued) presence of barriers at
22  the J. Crew Facility is so obvious as to establish the J. Crew Defendant's
23  discriminatory intent. On information and belief, Martinez avers that evidence of
24  the discriminatory intent includes the J. Crew Defendant's refusal to adhere to
25  relevant building standards; disregard for the building plans and permits issued
26  for the J. Crew Facility; conscientious decision to the architectural layout (as it

27

28
─────────────
[4]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  currently exists) at the J. Crew Facility; decision not to remove barriers from the
2  J. Crew Facility; and allowance that the J. Crew Facility continues to exist in its
3  non-compliant state. Martinez further alleges, on information and belief, that the
4  J. Crew Defendant is not in the midst of a remodel, and that the barriers present
5  at the J. Crew Facility are not isolated (or temporary) interruptions in access due
6  to maintenance or repairs.[5]

7  81.  The Barneys New York Defendant knew that these elements and
8  areas of the Barneys New York Facility were inaccessible, violate state and
9  federal law, and interfere with (or deny) access to the physically disabled.
10 Moreover, the Barneys New York Defendant has the financial resources to
11 remove these barriers from the Barneys New York Facility (without much
12 difficulty or expense), and make the Barneys New York Facility accessible to the
13 physically disabled. To date, however, the Barneys New York Defendant refuses
14 to either remove those barriers or seek an unreasonable hardship exemption to
15 excuse non-compliance.

16 82.  At all relevant times, the Barneys New York Defendant has
17 possessed and enjoyed sufficient control and authority to modify the Barneys
18 New York Facility to remove impediments to wheelchair access and to comply
19 with the Americans with Disabilities Act Accessibility Guidelines and Title 24
20 regulations.  The Barneys New York Defendant has not removed such
21 impediments and has not modified the Barneys New York Facility to conform to
22 accessibility standards. The Barneys New York Defendant has intentionally
23 maintained the Barneys New York Facility in its current condition and has
24 intentionally refrained from altering the Barneys New York Facility so that it
25 complies with the accessibility standards.

26
27
28

---

[5]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 28

1    83.    Martinez further alleges that the (continued) presence of barriers at
2  the Barneys New York Facility is so obvious as to establish the Barneys New
3  York Defendant's discriminatory intent. On information and belief, Martinez
4  avers that evidence of the discriminatory intent includes the Barneys New York
5  Defendant's refusal to adhere to relevant building standards; disregard for the
6  building plans and permits issued for the Barneys New York Facility;
7  conscientious decision to the architectural layout (as it currently exists) at the
8  Barneys New York Facility; decision not to remove barriers from the Barneys
9  New York Facility; and allowance that the Barneys New York Facility continues
10  to exist in its non-compliant state.  Martinez further alleges, on information and
11  belief, that the Barneys New York Defendant is not in the midst of a remodel,
12  and that the barriers present at the Barneys New York Facility are not isolated (or
13  temporary) interruptions in access due to maintenance or repairs.[6]

14    84.    The Gap Defendant knew that these elements and areas of the Gap
15  Facility were inaccessible, violate state and federal law, and interfere with (or
16  deny) access to the physically disabled.  Moreover, the Gap Defendant has the
17  financial resources to remove these barriers from the Gap Facility (without much
18  difficulty or expense), and make the Gap Facility accessible to the physically
19  disabled.  To date, however, the Gap Defendant refuses to either remove those
20  barriers or seek an unreasonable hardship exemption to excuse non-compliance.

21    85.    At all relevant times, the Gap Defendant has possessed and enjoyed
22  sufficient control and authority to modify the Gap Facility to remove
23  impediments to wheelchair access and to comply with the Americans with
24  Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Gap
25  Defendant has not removed such impediments and has not modified the Gap
26  Facility to conform to accessibility standards.    The Gap Defendant has

27

28    _____
     [6]    Id.; 28 C.F.R. § 36.211(b)
     *Martinez v. Chelsea Financing Partnership, LP, et al.*
     Plaintiff's Complaint

1  intentionally maintained the Gap Facility in its current condition and has
2  intentionally refrained from altering the Gap Facility so that it complies with the
3  accessibility standards.

4  86.  Martinez further alleges that the (continued) presence of barriers at
5  the Gap Facility is so obvious as to establish the Gap Defendant's discriminatory
6  intent. On information and belief, Martinez avers that evidence of the
7  discriminatory intent includes the Gap Defendant's refusal to adhere to relevant
8  building standards; disregard for the building plans and permits issued for the
9  Gap Facility; conscientious decision to the architectural layout (as it currently
10  exists) at the Gap Facility; decision not to remove barriers from the Gap Facility;
11  and allowance that the Gap Facility continues to exist in its non-compliant state.
12  Martinez further alleges, on information and belief, that the Gap Defendant is not
13  in the midst of a remodel, and that the barriers present at the Gap Facility are not
14  isolated (or temporary) interruptions in access due to maintenance or repairs.[7]

15  87.  The Lucky Defendant knew that these elements and areas of the
16  Lucky Facility were inaccessible, violate state and federal law, and interfere with
17  (or deny) access to the physically disabled. Moreover, the Lucky Defendant has
18  the financial resources to remove these barriers from the Lucky Facility (without
19  much difficulty or expense), and make the Lucky Facility accessible to the
20  physically disabled. To date, however, the Lucky Defendant refuses to either
21  remove those barriers or seek an unreasonable hardship exemption to excuse
22  non-compliance.

23  88.  At all relevant times, the Lucky Defendant has possessed and
24  enjoyed sufficient control and authority to modify the Lucky Facility to remove
25  impediments to wheelchair access and to comply with the Americans with
26  Disabilities Act Accessibility Guidelines and Title 24 regulations. The Lucky

27
28
---
[7]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  Defendant has not removed such impediments and has not modified the Lucky
2  Facility to conform to accessibility standards. The Lucky Defendant has
3  intentionally maintained the Lucky Facility in its current condition and has
4  intentionally refrained from altering the Lucky Facility so that it complies with
5  the accessibility standards.

6      89.   Martinez further alleges that the (continued) presence of barriers at
7  the Lucky Facility is so obvious as to establish the Lucky Defendant's
8  discriminatory intent. On information and belief, Martinez avers that evidence of
9  the discriminatory intent includes the Lucky Defendant's refusal to adhere to
10  relevant building standards; disregard for the building plans and permits issued
11  for the Lucky Facility; conscientious decision to the architectural layout (as it
12  currently exists) at the Lucky Facility; decision not to remove barriers from the
13  Lucky Facility; and allowance that the Lucky Facility continues to exist in its
14  non-compliant state. Martinez further alleges, on information and belief, that the
15  Lucky Defendant is not in the midst of a remodel, and that the barriers present at
16  the Lucky Facility are not isolated (or temporary) interruptions in access due to
17  maintenance or repairs.[8]

18      90.   The Dockers Defendant knew that these elements and areas of the
19  Dockers Facility were inaccessible, violate state and federal law, and interfere
20  with (or deny) access to the physically disabled. Moreover, the Dockers
21  Defendant has the financial resources to remove these barriers from the Dockers
22  Facility (without much difficulty or expense), and make the Dockers Facility
23  accessible to the physically disabled. To date, however, the Dockers Defendant
24  refuses to either remove those barriers or seek an unreasonable hardship
25  exemption to excuse non-compliance.

26

27

28
_____
[8] Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 31

1    91.    At all relevant times, the Dockers Defendant has possessed and
2   enjoyed sufficient control and authority to modify the Dockers Facility to remove
3   impediments to wheelchair access and to comply with the Americans with
4   Disabilities Act Accessibility Guidelines and Title 24 regulations. The Dockers
5   Defendant has not removed such impediments and has not modified the Dockers
6   Facility to conform to accessibility standards. The Dockers Defendant has
7   intentionally maintained the Dockers Facility in its current condition and has
8   intentionally refrained from altering the Dockers Facility so that it complies with
9   the accessibility standards.

10    92.    Martinez further alleges that the (continued) presence of barriers at
11  the Dockers Facility is so obvious as to establish the Dockers Defendant's
12  discriminatory intent. On information and belief, Martinez avers that evidence of
13  the discriminatory intent includes the Dockers Defendant's refusal to adhere to
14  relevant building standards; disregard for the building plans and permits issued
15  for the Dockers Facility; conscientious decision to the architectural layout (as it
16  currently exists) at the Dockers Facility; decision not to remove barriers from the
17  Dockers Facility; and allowance that the Dockers Facility continues to exist in its
18  non-compliant state. Martinez further alleges, on information and belief, that the
19  Dockers Defendant is not in the midst of a remodel, and that the barriers present
20  at the Dockers Facility are not isolated (or temporary) interruptions in access due
21  to maintenance or repairs.[9]

22    93.    The Calvin Klein Defendant knew that these elements and areas of
23  the Calvin Klein Facility were inaccessible, violate state and federal law, and
24  interfere with (or deny) access to the physically disabled. Moreover, the Calvin
25  Klein Defendant has the financial resources to remove these barriers from the
26  Calvin Klein Facility (without much difficulty or expense), and make the Calvin

27

28  _____
    [9]   Id.; 28 C.F.R. § 36.211(b)
    *Martinez v. Chelsea Financing Partnership, LP, et al.*
    Plaintiff's Complaint

1 Klein Facility accessible to the physically disabled. To date, however, the
2 Calvin Klein Defendant refuses to either remove those barriers or seek an
3 unreasonable hardship exemption to excuse non-compliance.

4 94. At all relevant times, the Calvin Klein Defendant has possessed and
5 enjoyed sufficient control and authority to modify the Calvin Klein Facility to
6 remove impediments to wheelchair access and to comply with the Americans
7 with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
8 Calvin Klein Defendant has not removed such impediments and has not modified
9 the Calvin Klein Facility to conform to accessibility standards. The Calvin Klein
10 Defendant has intentionally maintained the Calvin Klein Facility in its current
11 condition and has intentionally refrained from altering the Calvin Klein Facility
12 so that it complies with the accessibility standards.

13 95. Martinez further alleges that the (continued) presence of barriers at
14 the Calvin Klein Facility is so obvious as to establish the Calvin Klein
15 Defendant's discriminatory intent. On information and belief, Martinez avers
16 that evidence of the discriminatory intent includes the Calvin Klein Defendant's
17 refusal to adhere to relevant building standards; disregard for the building plans
18 and permits issued for the Calvin Klein Facility; conscientious decision to the
19 architectural layout (as it currently exists) at the Calvin Klein Facility; decision
20 not to remove barriers from the Calvin Klein Facility; and allowance that the
21 Calvin Klein Facility continues to exist in its non-compliant state. Martinez
22 further alleges, on information and belief, that the Calvin Klein Defendant is not
23 in the midst of a remodel, and that the barriers present at the Calvin Klein
24 Facility are not isolated (or temporary) interruptions in access due to
25 maintenance or repairs.[10]

26
27
28

[10] Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1    96.    The Brooks Brothers Defendant knew that these elements and areas

2  of the Brooks Brothers Facility were inaccessible, violate state and federal law,

3  and interfere with (or deny) access to the physically disabled. Moreover, the

4  Brooks Brothers Defendant has the financial resources to remove these barriers

5  from the Brooks Brothers Facility (without much difficulty or expense), and

6  make the Brooks Brothers Facility accessible to the physically disabled. To date,

7  however, the Brooks Brothers Defendant refuses to either remove those barriers

8  or seek an unreasonable hardship exemption to excuse non-compliance.

9    97.    At all relevant times, the Brooks Brothers Defendant has possessed

10  and enjoyed sufficient control and authority to modify the Brooks Brothers

11  Facility to remove impediments to wheelchair access and to comply with the

12  Americans with Disabilities Act Accessibility Guidelines and Title 24

13  regulations. The Brooks Brothers Defendant has not removed such impediments

14  and has not modified the Brooks Brothers Facility to conform to accessibility

15  standards.    The Brooks Brothers Defendant has intentionally maintained the

16  Brooks Brothers Facility in its current condition and has intentionally refrained

17  from altering the Brooks Brothers Facility so that it complies with the

18  accessibility standards.

19    98.    Martinez further alleges that the (continued) presence of barriers at

20  the Brooks Brothers Facility is so obvious as to establish the Brooks Brothers

21  Defendant's discriminatory intent. On information and belief, Martinez avers

22  that evidence of the discriminatory intent includes the Brooks Brothers

23  Defendant's refusal to adhere to relevant building standards; disregard for the

24  building plans and permits issued for the Brooks Brothers Facility; conscientious

25  decision to the architectural layout (as it currently exists) at the Brooks Brothers

26  Facility; decision not to remove barriers from the Brooks Brothers Facility; and

27  allowance that the Brooks Brothers Facility continues to exist in its non-

28  compliant state. Martinez further alleges, on information and belief, that the

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  Brooks Brothers Defendant is not in the midst of a remodel, and that the barriers
2  present at the Brooks Brothers Facility are not isolated (or temporary)
3  interruptions in access due to maintenance or repairs.[11]

4      99.    The Zumiez Defendant knew that these elements and areas of the
5  Zumiez Facility were inaccessible, violate state and federal law, and interfere
6  with (or deny) access to the physically disabled.    Moreover, the Zumiez
7  Defendant has the financial resources to remove these barriers from the Zumiez
8  Facility (without much difficulty or expense), and make the Zumiez Facility
9  accessible to the physically disabled.  To date, however, the Zumiez Defendant
10 refuses to either remove those barriers or seek an unreasonable hardship
11 exemption to excuse non-compliance.

12     100.  At all relevant times, the Zumiez Defendant has possessed and
13 enjoyed sufficient control and authority to modify the Zumiez Facility to remove
14 impediments to wheelchair access and to comply with the Americans with
15 Disabilities Act Accessibility Guidelines and Title 24 regulations.  The Zumiez
16 Defendant has not removed such impediments and has not modified the Zumiez
17 Facility to conform to accessibility standards.   The Zumiez Defendant has
18 intentionally maintained the Zumiez Facility in its current condition and has
19 intentionally refrained from altering the Zumiez Facility so that it complies with
20 the accessibility standards.

21     101.  Martinez further alleges that the (continued) presence of barriers at
22 the Zumiez Facility is so obvious as to establish the Zumiez Defendant's
23 discriminatory intent. On information and belief, Martinez avers that evidence of
24 the discriminatory intent includes the Zumiez Defendant's refusal to adhere to
25 relevant building standards; disregard for the building plans and permits issued
26 for the Zumiez Facility; conscientious decision to the architectural layout (as it

28 ---
[11]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  currently exists) at the Zumiez Facility; decision not to remove barriers from the
2  Zumiez Facility; and allowance that the Zumiez Facility continues to exist in its
3  non-compliant state. Martinez further alleges, on information and belief, that the
4  Zumiez Defendant is not in the midst of a remodel, and that the barriers present
5  at the Zumiez Facility are not isolated (or temporary) interruptions in access due
6  to maintenance or repairs.[12]

7  102. The Nautica Defendant knew that these elements and areas of the
8  Nautica Facility were inaccessible, violate state and federal law, and interfere
9  with (or deny) access to the physically disabled. Moreover, the Nautica
10 Defendant has the financial resources to remove these barriers from the Nautica
11 Facility (without much difficulty or expense), and make the Nautica Facility
12 accessible to the physically disabled. To date, however, the Nautica Defendant
13 refuses to either remove those barriers or seek an unreasonable hardship
14 exemption to excuse non-compliance.

15 103. At all relevant times, the Nautica Defendant has possessed and
16 enjoyed sufficient control and authority to modify the Nautica Facility to remove
17 impediments to wheelchair access and to comply with the Americans with
18 Disabilities Act Accessibility Guidelines and Title 24 regulations. The Nautica
19 Defendant has not removed such impediments and has not modified the Nautica
20 Facility to conform to accessibility standards. The Nautica Defendant has
21 intentionally maintained the Nautica Facility in its current condition and has
22 intentionally refrained from altering the Nautica Facility so that it complies with
23 the accessibility standards.

24 104. Martinez further alleges that the (continued) presence of barriers at
25 the Nautica Facility is so obvious as to establish the Nautica Defendant's
26 discriminatory intent. On information and belief, Martinez avers that evidence of

27

28 _____
[12]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  the discriminatory intent includes the Nautica Defendant's refusal to adhere to
2  relevant building standards; disregard for the building plans and permits issued
3  for the Nautica Facility; conscientious decision to the architectural layout (as it
4  currently exists) at the Nautica Facility; decision not to remove barriers from the
5  Nautica Facility; and allowance that the Nautica Facility continues to exist in its
6  non-compliant state. Martinez further alleges, on information and belief, that the
7  Nautica Defendant is not in the midst of a remodel, and that the barriers present
8  at the Nautica Facility are not isolated (or temporary) interruptions in access due
9  to maintenance or repairs.[13]

10  105.  The Levi's Defendant knew that these elements and areas of the
11  Levi's Facility were inaccessible, violate state and federal law, and interfere with
12  (or deny) access to the physically disabled. Moreover, the Levi's Defendant has
13  the financial resources to remove these barriers from the Levi's Facility (without
14  much difficulty or expense), and make the Levi's Facility accessible to the
15  physically disabled. To date, however, the Levi's Defendant refuses to either
16  remove those barriers or seek an unreasonable hardship exemption to excuse
17  non-compliance.

18  106.  At all relevant times, the Levi's Defendant has possessed and
19  enjoyed sufficient control and authority to modify the Levi's Facility to remove
20  impediments to wheelchair access and to comply with the Americans with
21  Disabilities Act Accessibility Guidelines and Title 24 regulations. The Levi's
22  Defendant has not removed such impediments and has not modified the Levi's
23  Facility to conform to accessibility standards. The Levi's Defendant has
24  intentionally maintained the Levi's Facility in its current condition and has
25  intentionally refrained from altering the Levi's Facility so that it complies with
26  the accessibility standards.

27
28
---
[13]  Id.; 28 C.F.R. § 36.211(b)
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1    107. Martinez further alleges that the (continued) presence of barriers at
2    the Levi's Facility is so obvious as to establish the Levi's Defendant's
3    discriminatory intent. On information and belief, Martinez avers that evidence of
4    the discriminatory intent includes the Levi's Defendant's refusal to adhere to
5    relevant building standards; disregard for the building plans and permits issued
6    for the Levi's Facility; conscientious decision to the architectural layout (as it
7    currently exists) at the Levi's Facility; decision not to remove barriers from the
8    Levi's Facility; and allowance that the Levi's Facility continues to exist in its
9    non-compliant state. Martinez further alleges, on information and belief, that the
10   Levi's Defendant is not in the midst of a remodel, and that the barriers present at
11   the Levi's Facility are not isolated (or temporary) interruptions in access due to
12   maintenance or repairs.[14]

13                              VI.    FIRST CLAIM

14              **Americans with Disabilities Act of 1990**

15              Denial of "Full and Equal" Enjoyment and Use

16              (The Napa Premium Outlets Common Area Facility)

17   108. Martinez incorporates the allegations contained in paragraphs 1
18   through 107 for this claim.

19   109. Title III of the ADA holds as a "general rule" that no individual
20   shall be discriminated against on the basis of disability in the full and equal
21   enjoyment (or use) of goods, services, facilities, privileges, and accommodations
22   offered by any person who owns, operates, or leases a place of public
23   accommodation. 42 U.S.C. § 12182(a).

24   110. The Napa Premium Outlets Common Area Defendant discriminated
25   against Martinez by denying "full and equal enjoyment" and use of the goods,
26
27
28   ────────────
     [14] Id.; 28 C.F.R. § 36.211(b)
     *Martinez v. Chelsea Financing Partnership, LP, et al.*
     Plaintiff's Complaint

1  services, facilities, privileges or accommodations of the Napa Premium Outlets
2  Common Area Facility during each visit and each incident of deterrence.

3  Failure to Remove Architectural Barriers in an Existing Facility

4  111. The ADA specifically prohibits failing to remove architectural
5  barriers, which are structural in nature, in existing facilities where such removal
6  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily
7  achievable" is defined as "easily accomplishable and able to be carried out
8  without much difficulty or expense." Id. § 12181(9).

9  112. When an entity can demonstrate that removal of a barrier is not
10  readily achievable, a failure to make goods, services, facilities, or
11  accommodations available through alternative methods is also specifically
12  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

13  113. Here, Martinez alleges that the Napa Premium Outlets Common
14  Area Defendant can easily remove the architectural barriers at the Napa Premium
15  Outlets Common Area Facility without much difficulty or expense, and that the
16  Napa Premium Outlets Common Area Defendant violated the ADA by failing to
17  remove those barriers, when it was readily achievable to do so.

18  114. In the alternative, if it was not "readily achievable" for the Napa
19  Premium Outlets Common Area Defendant to remove the Napa Premium Outlets
20  Common Area Facility's barriers, then the Napa Premium Outlets Common Area
21  Defendant violated the ADA by failing to make the required services available
22  through alternative methods, which are readily achievable.

23  Failure to Design and Construct an Accessible Facility

24  115. On information and belief, the Napa Premium Outlets Common
25  Area Facility was designed or constructed (or both) after January 26, 1992—
26  independently triggering access requirements under Title III of the ADA.

27  116. The ADA also prohibits designing and constructing facilities for
28  first occupancy after January 26, 1993, that aren't readily accessible to, and

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 39

1
2

usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

3
4
5
6
7

117. Here, the Napa Premium Outlets Common Area Defendant violated the ADA by designing or constructing (or both) the Napa Premium Outlets Common Area Facility in a manner that was not readily accessible to the physically disabled public—including Martinez—when it was structurally practical to do so.[15]

8

### Failure to Make an Altered Facility Accessible

9
10
11

118. On information and belief, the Napa Premium Outlets Common Area Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

12
13
14
15
16
17

119. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

18
19
20
21

120. Here, the Napa Premium Outlets Common Area Defendant altered the Napa Premium Outlets Common Area Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Martinez—to the maximum extent feasible.

22

### Failure to Modify Existing Policies and Procedures

23
24
25

121. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity

26
27
28

[15] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1 can demonstrate that making such modifications would fundamentally alter their
2 nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

3    122.  Here, the Napa Premium Outlets Common Area Defendant violated
4 the ADA by failing to make reasonable modifications in policies, practices, or
5 procedures at the Napa Premium Outlets Common Area Facility, when these
6 modifications were necessary to afford (and would not fundamentally alter the
7 nature of) these goods, services, facilities, or accommodations.

8    123.  Martinez seeks all relief available under the ADA (*i.e.*, injunctive
9 relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
10 U.S.C. § 12205.

11    124.  Martinez also seeks a finding from this Court (*i.e.,* declaratory
12 relief) that the Napa Premium Outlets Common Area Defendant violated the
13 ADA in order to pursue damages under California's Unruh Civil Rights Act or
14 Disabled Persons Act.

15              VII.    SECOND CLAIM

16              **Disabled Persons Act**

17              (The Napa Premium Outlets Common Area Facility)

18    125.  Martinez incorporates the allegations contained in paragraphs 1
19 through 107 for this claim.

20    126.  California Civil Code § 54 states, in part, that: Individuals with
21 disabilities have the same right as the general public to the full and free use of
22 the streets, sidewalks, walkways, public buildings and facilities, and other public
23 places.

24    127.  California Civil Code § 54.1 also states, in part, that: Individuals
25 with disabilities shall be entitled to full and equal access to accommodations,
26 facilities, telephone facilities, places of public accommodation, and other places
27 to which the general public is invited.

28

1    128. Both sections specifically incorporate (by reference) an individual's
2   rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

3    129. Here, the Napa Premium Outlets Common Area Defendant
4   discriminated against the physically disabled public—including Martinez—by
5   denying them full and equal access to the Napa Premium Outlets Common Area
6   Facility. The Napa Premium Outlets Common Area Defendant also violated
7   Martinez's rights under the ADA, and, therefore, infringed upon or violated (or
8   both) Martinez's rights under the Disabled Persons Act.

9    130. For each offense of the Disabled Persons Act, Martinez seeks actual
10  damages (both general and special damages), statutory minimum damages of one
11  thousand dollars ($1,000), declaratory relief, and any other remedy available
12  under California Civil Code § 54.3.

13   131. He also seeks to enjoin the Napa Premium Outlets Common Area
14  Defendant from violating the Disabled Persons Act (and ADA) under California
15  Civil Code § 55, and to recover reasonable attorneys' fees and incurred under
16  California Civil Code §§ 54.3 and 55.

17                    VIII.  THIRD CLAIM

18                 **Unruh Civil Rights Act**

19            (The Napa Premium Outlets Common Area Facility)

20   132. Martinez incorporates the allegations contained in paragraphs 1
21  through 107 for this claim.

22   133. California Civil Code § 51 states, in part, that: All persons within
23  the jurisdiction of this state are entitled to the full and equal accommodations,
24  advantages, facilities, privileges, or services in all business establishments of
25  every kind whatsoever.

26   134. California Civil Code § 51.5 also states, in part, that: No business
27  establishment of any kind whatsoever shall discriminate against any person in
28  this state because of the disability of the person.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 42

1  135. California Civil Code § 51(f) specifically incorporates (by
2  reference) an individual's rights under the ADA into the Unruh Act.

3  136. The Napa Premium Outlets Common Area Defendant'
4  aforementioned acts and omissions denied the physically disabled public—
5  including Martinez—full and equal accommodations, advantages, facilities,
6  privileges and services in a business establishment (because of their physical
7  disability).

8  137. These acts and omissions (including the ones that violate the ADA)
9  denied, aided or incited a denial, or discriminated against Martinez by violating
10 the Unruh Act.

11 138. Martinez was damaged by the Napa Premium Outlets Common Area
12 Defendant's wrongful conduct, and seeks statutory minimum damages of four
13 thousand dollars ($4,000) for each offense.

14 139. Martinez also seeks to enjoin the Napa Premium Outlets Common
15 Area Defendant from violating the Unruh Act (and ADA), and recover
16 reasonable attorneys' fees and costs incurred under California Civil Code §
17 52(a).

18                    IX.    FOURTH CLAIM
19            **Denial of Full and Equal Access to Public Facilities**
20            (The Napa Premium Outlets Common Area Facility)

21 140. Martinez incorporates the allegations contained in paragraphs 1
22 through 107 for this claim.

23 141. Health and Safety Code § 19955(a) states, in part, that: California
24 public accommodations or facilities (built with private funds) shall adhere to the
25 provisions of Government Code § 4450.

26 142. Health and Safety Code § 19959 states, in part, that: Every existing
27 (non-exempt) public accommodation constructed prior to July 1, 1970, which is
28 altered or structurally repaired, is required to comply with this chapter.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1    143. Martinez alleges the Napa Premium Outlets Common Area Facility
2  is a public accommodation constructed, altered, or repaired in a manner that
3  violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or
4  both), and that the Napa Premium Outlets Common Area Facility was not exempt
5  under Health and Safety Code § 19956.

6    144. The Napa Premium Outlets Common Area Defendant's non-
7  compliance with these requirements at the Napa Premium Outlets Common Area
8  Facility aggrieved (or potentially aggrieved) Martinez and other persons with
9  physical disabilities. Accordingly, he seeks injunctive relief and attorney fees
10  pursuant to Health and Safety Code § 19953.

11                          X.    FIFTH CLAIM
12                **Americans with Disabilities Act of 1990**
13                Denial of "Full and Equal" Enjoyment and Use
14                      (The Kenneth Cole Facility)

15    145. Martinez incorporates the allegations contained in paragraphs 1
16  through 107 for this claim.

17    146. Title III of the ADA holds as a "general rule" that no individual
18  shall be discriminated against on the basis of disability in the full and equal
19  enjoyment (or use) of goods, services, facilities, privileges, and accommodations
20  offered by any person who owns, operates, or leases a place of public
21  accommodation. 42 U.S.C. § 12182(a).

22    147. The Kenneth Cole Defendant discriminated against Martinez by
23  denying "full and equal enjoyment" and use of the goods, services, facilities,
24  privileges or accommodations of the Kenneth Cole Facility during each visit and
25  each incident of deterrence.

26            Failure to Remove Architectural Barriers in an Existing Facility

27    148. The ADA specifically prohibits failing to remove architectural
28  barriers, which are structural in nature, in existing facilities where such removal

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily
2  achievable" is defined as "easily accomplishable and able to be carried out
3  without much difficulty or expense." Id. § 12181(9).

4      149. When an entity can demonstrate that removal of a barrier is not
5  readily achievable, a failure to make goods, services, facilities, or
6  accommodations available through alternative methods is also specifically
7  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

8      150. Here, Martinez alleges that the Kenneth Cole Defendant can easily
9  remove the architectural barriers at the Kenneth Cole Facility without much
10  difficulty or expense, and that the Kenneth Cole Defendant violated the ADA by
11  failing to remove those barriers, when it was readily achievable to do so.

12      151. In the alternative, if it was not "readily achievable" for the Kenneth
13  Cole Defendant to remove the Kenneth Cole Facility's barriers, then the Kenneth
14  Cole Defendant violated the ADA by failing to make the required services
15  available through alternative methods, which are readily achievable.

16              Failure to Design and Construct an Accessible Facility

17      152. On information and belief, the Kenneth Cole Facility was designed
18  or constructed (or both) after January 26, 1992—independently triggering access
19  requirements under Title III of the ADA.

20      153. The ADA also prohibits designing and constructing facilities for
21  first occupancy after January 26, 1993, that aren't readily accessible to, and
22  usable by, individuals with disabilities when it was structurally practicable to do
23  so. 42 U.S.C. § 12183(a)(1).

24      154. Here, the Kenneth Cole Defendant violated the ADA by designing
25  or constructing (or both) the Kenneth Cole Facility in a manner that was not

26
27
28

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 45

1  readily accessible to the physically disabled public—including Martinez—when
2  it was structurally practical to do so.[16]

3  ## Failure to Make an Altered Facility Accessible

4  155.  On information and belief, the Kenneth Cole Facility was modified
5  after January 26, 1992, independently triggering access requirements under the
6  ADA.

7  156.  The ADA also requires that facilities altered in a manner that affects
8  (or could affect) its usability must be made readily accessible to individuals with
9  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
10 an area that contains a facility's primary function also requires adding making
11 the paths of travel, bathrooms, telephones, and drinking fountains serving that
12 area accessible to the maximum extent feasible. Id.

13 157.  Here, the Kenneth Cole Defendant altered the Kenneth Cole Facility
14 in a manner that violated the ADA and was not readily accessible to the
15 physically disabled public—including Martinez—to the maximum extent
16 feasible.

17 ## Failure to Modify Existing Policies and Procedures

18 158.  The ADA also requires reasonable modifications in policies,
19 practices, or procedures, when necessary to afford such goods, services,
20 facilities, or accommodations to individuals with disabilities, unless the entity
21 can demonstrate that making such modifications would fundamentally alter their
22 nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

23 159.  Here, the Kenneth Cole Defendant violated the ADA by failing to
24 make reasonable modifications in policies, practices, or procedures at the
25 Kenneth Cole Facility, when these modifications were necessary to afford (and
26
27

28 [16] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.
*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1 would not fundamentally alter the nature of) these goods, services, facilities, or
2 accommodations.

3      160.    Martinez seeks all relief available under the ADA (*i.e.*, injunctive
4 relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5 U.S.C. § 12205.

6      161.    Martinez also seeks a finding from this Court (*i.e.,* declaratory
7 relief) that the Kenneth Cole Defendant violated the ADA in order to pursue
8 damages under California's Unruh Civil Rights Act or Disabled Persons Act.

9                    XI.      SIXTH CLAIM
10                    **Disabled Persons Act**
11                    (The Kenneth Cole Facility)

12     162.    Martinez incorporates the allegations contained in paragraphs 1
13 through 107 for this claim.

14     163.    California Civil Code § 54 states, in part, that: Individuals with
15 disabilities have the same right as the general public to the full and free use of
16 the streets, sidewalks, walkways, public buildings and facilities, and other public
17 places.

18     164.    California Civil Code § 54.1 also states, in part, that: Individuals
19 with disabilities shall be entitled to full and equal access to accommodations,
20 facilities, telephone facilities, places of public accommodation, and other places
21 to which the general public is invited.

22     165.    Both sections specifically incorporate (by reference) an individual's
23 rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24     166.    Here, the Kenneth Cole Defendant discriminated against the
25 physically disabled public—including Martinez—by denying them full and equal
26 access to the Kenneth Cole Facility.  The Kenneth Cole Defendant also violated
27 Martinez's rights under the ADA, and, therefore, infringed upon or violated (or
28 both) Martinez's rights under the Disabled Persons Act.

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

Page 47

1    167.  For each offense of the Disabled Persons Act, Martinez seeks actual
2  damages (both general and special damages), statutory minimum damages of one
3  thousand dollars ($1,000), declaratory relief, and any other remedy available
4  under California Civil Code § 54.3.

5    168.  He also seeks to enjoin the Kenneth Cole Defendant from violating
6  the Disabled Persons Act (and ADA) under California Civil Code § 55, and to
7  recover reasonable attorneys' fees and incurred under California Civil Code §§
8  54.3 and 55.

9                    XII.    SEVENTH CLAIM

10                    **Unruh Civil Rights Act**

11                    (The Kenneth Cole Facility)

12    169.  Martinez incorporates the allegations contained in paragraphs 1
13  through 107 for this claim.

14    170.  California Civil Code § 51 states, in part, that: All persons within
15  the jurisdiction of this state are entitled to the full and equal accommodations,
16  advantages, facilities, privileges, or services in all business establishments of
17  every kind whatsoever.

18    171.  California Civil Code § 51.5 also states, in part, that: No business
19  establishment of any kind whatsoever shall discriminate against any person in
20  this state because of the disability of the person.

21    172.  California Civil Code § 51(f) specifically incorporates (by
22  reference) an individual's rights under the ADA into the Unruh Act.

23    173.  The Kenneth Cole Defendant's aforementioned acts and omissions
24  denied the physically disabled public—including Martinez—full and equal
25  accommodations, advantages, facilities, privileges and services in a business
26  establishment (because of their physical disability).

27

28

*Martinez v. Chelsea Financing Partnership, LP, et al.*
Plaintiff's Complaint

1  174.  These acts and omissions (including the ones that violate the ADA)
2  denied, aided or incited a denial, or discriminated against Martinez by violating
3  the Unruh Act.

4  175.  Martinez was damaged by the Kenneth Cole Defendant' wrongful
5  conduct, and seeks statutory minimum damages of four thousand dollars
6  ($4,000) for each offense.

7  176.  Martinez also seeks to enjoin the Kenneth Cole Defendant from
8  violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and
9  costs incurred under California Civil Code § 52(a).

10                    XIII.    EIGHTH CLAIM
11        **Denial of Full and Equal Access to Public Facilities**
12                    (The Kenneth Cole Facility)

13  177.  Martinez incorporates the allegations contained in paragraphs 1
14  through 107 for this claim.

15  178.  Health and Safety Code § 19955(a) states, in part, that: California
16  public accommodations or facilities (built with private funds) shall adhere to the
17  provisions of Government Code § 4450.

18  179.  Health and Safety Code § 19959 states, in part, that: Every existing
19  (non-exempt) public accommodation constructed prior to July 1, 1970, which is
20  altered or structurally repaired, is required to comply with this chapter.

21  180.  Martinez alleges the Kenneth Cole Facility is a public
22  accommodation constructed, altered, or repaired in a manner that violates Part
23  5.5 of the Health and Safety Code or Government Code § 4450 (or both), and
24  that the Kenneth Cole Facility was not exempt under Health and Safety Code §
25  19956.

26  181.  The Kenneth Cole Defendant's non-compliance with these
27  requirements at the Kenneth Cole Facility aggrieved (or potentially aggrieved)
28

1  Martinez and other persons with physical disabilities. Accordingly, he seeks
2  injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

3  <div align="center">XIV.   NINTH CLAIM</div>

4  **<div align="center">Americans with Disabilities Act of 1990</div>**

5  <div align="center">Denial of "Full and Equal" Enjoyment and Use</div>

6  <div align="center">(The Tommy Hilfiger Facility)</div>

7     182.   Martinez incorporates the allegations contained in paragraphs 1
8  through 107 for this claim.

9     183.   Title III of the ADA holds as a "general rule" that no individual
10  shall be discriminated against on the basis of disability in the full and equal
11  enjoyment (or use) of goods, services, facilities, privileges, and accommodations
12  offered by any person who owns, operates, or leases a place of public
13  accommodation. 42 U.S.C. § 12182(a).

14     184.   The Tommy Hilfiger Defendant discriminated against Martinez by
15  denying "full and equal enjoyment" and use of the goods, services, facilities,
16  privileges or accommodations of the Tommy Hilfiger Facility during each visit
17  and each incident of deterrence.

18  <div align="center">Failure to Remove Architectural Barriers in an Existing Facility</div>

19     185.   The ADA specifically prohibits failing to remove architectural
20  barriers, which are structural in nature, in existing facilities where such removal
21  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily
22  achievable" is defined as "easily accomplishable and able to be carried out
23  without much difficulty or expense." Id. § 12181(9).

24     186.   When an entity can demonstrate that removal of a barrier is not
25  readily achievable, a failure to make goods, services, facilities, or
26  accommodations available through alternative methods is also specifically
27  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

28